**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SEAN CURTIS, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 16-3597 |
| | : | |
| CINTAS CORPORATION, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                    **JANUARY  17, 2017**

Presently before the Court is a Motion to Dismiss or, Alternatively, to Stay Proceedings Pending Arbitration filed by Defendant, Cintas Corporation ("Cintas"), the Response in Opposition filed by Plaintiff, Sean Curtis ("Curtis"), and the Reply by Cintas.  For the reasons set forth below, we grant Cintas' Motion.

**I.      BACKGROUND**

The Complaint states that Cintas is involved in "supplying identity uniform programs, providing entrance and logo mats, restroom supplies, promotional products, first aid, safety, fire protection products and services, and industrial carpet and tile cleaning." (Compl. ¶ 12.)  On or about February 11, 2013, Cintas hired Curtis as a "catalog manager."  (Id. ¶ 25.)  On that same day, Curtis entered into a written employment agreement ("Employment Agreement") with Cintas.  (Def.'s Mem. Law Support Mot. to Dismiss/Stay at 2-3, Ex. 1A (Agreement); Pl.'s Opp'n Def.'s Mot. to Dismiss/Stay at 8.)

Section 8 of the Employment Agreement contains the parties' agreement to arbitrate ("Arbitration Agreement").  (Def.'s Mem. Law Support Mot. to Dismiss/Stay; Ex. 1A ¶ 8.).

In Section 8, the parties agreed, in pertinent part, as follows:

>   8.   EXCLUSIVE  METHOD OF RESOLVING  DISPUTES OR DIFFERENCES.
>
>   Should any dispute or difference arise between Employee and Employer
>   concerning whether either party at any time violated any duty, right, law,
>   regulation, public policy, or provision of this Agreement, the parties will confer and
>   attempt in good faith to resolve promptly such dispute or difference.  The rights and
>   claims of Employer covered by this Section 8, including the arbitration provisions below,
>   include Employer's claims for damages, as well as reasonable costs and attorneys' fees,
>   caused by Employee's violation of any provision of this Agreement or any law,
>   regulation or public policy.  The rights and claims of Employee covered by this Section
>   8, including the arbitration provisions below, include Employee's rights or claims for
>   damages as well as reasonable costs and attorneys' fees, caused by Employer's violation
>   of any provision of this Agreement or any law, regulation or public policy.  The rights
>   and claims of Employee covered by this Section 8, including the arbitration provisions
>   below, specifically include but are not limited to all of Employee's rights or claims
>   arising out of or in any way related  to Employee's employment with Employer, such as
>   rights or claims arising under the Age Discrimination in Employment Act,  as amended,
>   Title VII  of  the  Civil  Rights  Act  of  1964, as amended (including amendments
>   contained  in the Civil Rights  Act of 1991), . . . 42 U.S.C. §1981, . . . state  anti-
>   discrimination statutes, other state or local laws regarding employment, common law
>   theories such as breach of express or implied contract, wrongful discharge defamation,
>   and negligent or intentional infliction of emotional distress. . . .
>
>   Either party desiring to pursue a claim against the other party will submit to the
>   other party a written request to have such claim, dispute or difference resolved
>   through impartial and confidential arbitration.  The place of arbitration shall be in the
>   county and state where Employee currently works for Employer or most recently
>   worked for Employer. . . .

(Id. at 2; Ex. 1A ¶ 8.).

In 2015, Curtis' employment with Cintas was terminated.  (Compl. ¶ 80.)  On June 30,

2016, Curtis filed a Complaint asserting claims for race discrimination and retaliation under Title

VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1981 and the Pennsylvania Human

Relations Act.  (See id.)  Cintas filed the present Motion to Dismiss or, Alternatively, to Stay

Proceedings Pending Arbitration arguing that all of Curtis' claims are covered by Section 8 of

the Employment Agreement.  (See Def.'s Mem. Law Support Mot. to Dismiss/Stay; Def.'s

Reply.)  Curtis does not argue that his claims are outside the scope of the Arbitration Agreement; rather, he asserts that the Arbitration Agreement is unenforceable under Pennsylvania law because it is unconscionable.  (Pl.'s Opp'n Def.'s Mot. to Dismiss/Stay at 6.)  Since the scope of the Arbitration Agreement is not at issue, the sole issue to be decided is whether a valid arbitration agreement exists.  For the reasons set forth below, this Court finds the Arbitration Agreement is valid and, therefore, enforceable.

## II.     **LEGAL STANDARD**

In order to determine whether a valid arbitration agreement exists, we must initially decide whether that determination is made under Federal Rule of Civil Procedure 12(b)(6) or 56, and, thus, what materials may be considered.  See Sanford v. Bracewell & Guiliani, LLP, 618 F. App'x 114, 117 (3d Cir. 2015).  "Motions to compel arbitration are reviewed under Rule 12(b)(6) '[w]here the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or . . . documents relied upon in the complaint).'"  Id. (quoting Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 773–74 (3d Cir. 2013)).  "If the motion to compel arbitration is not based on a complaint 'with the requisite clarity' to establish arbitrability or 'the opposing party has come forth with reliable evidence that is more than a naked assertion . . . that it did not intend to be bound by the arbitration agreement, even though on the face of the pleadings it appears that it did,' resort to discovery and Rule 56 is proper."  Id. (quoting Guidotti, 716 F.3d at 774).

Curtis does not mention the Employment Agreement in his Complaint; however, it is clearly integral to his claims.  See Hewitt v. Rose Grp., No. 15-5992, 2016 WL 2893350, at *2 n.1 (E.D. Pa. Mar. 21, 2016) ("It would frustrate the purposes of the Federal Arbitration Act if plaintiffs could avoid having their claims quickly compelled to arbitration simply by failing to

mention the existence of clearly applicable arbitration agreements in their complaints.")  Cintas attached the Employment Agreement to its Motion, and Curtis does not contest its authenticity. (See Def.'s Mot. to Dismiss/Stay; Ex. 1A.)  Since there is no question that the Employment Agreement is integral to Curtis' claims, and there is no dispute of its authenticity, we will consider it.

Finding that arbitrability is facially established, the Rule 12(b)(6) standard applies.  See Guidotti, 716 F.3d at 776 (stating, under the Rule 12(b)(6) standard, "[w]e consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents") (citation omitted); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (stating that even if a "[c]omplaint does not explicitly refer to or cite [a document] . . . the critical [issue] is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited"); Pension Benefit Guaranty Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.  Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied.").  Thus, pursuant to Federal Rule of Civil Procedure 12(b)(6), we accept as true the facts plead in the Complaint construing them in the light most favorable to Curtis.  See Fed. R. Civ. P. 12(b)(6).

Besides the Employment Agreement, Cintas has attached material outside of the pleadings to its Motion.  (See Def.'s Mot. to Dismiss/Stay; Exs. 1, 2, 2A, 2B.)  We have not considered any of the additional documents referenced by Cintas in deciding this Motion other

than the Employment Agreement.  Also, we note that no discovery is needed because any further development of the factual record is unnecessary to decide the instant Motion.  Therefore, we deny Curtis' request for discovery.

## III.   DISCUSSION

Questions of arbitrability are governed by the Federal Arbitration Act ("FAA").  Quilloin v. Tenet HealthSystem Phila., Inc., 673 F.3d 221, 228 (3d Cir. 2012).  The FAA requires arbitration in accordance with the terms of the agreement if the making, or failure to comply with, the arbitration agreement is not an issue.  9 U.S.C. § 4.  A court is required to look to the relevant state law of contracts, here Pennsylvania, when deciding whether an arbitration agreement is valid under the FAA.[1]  Spinetti v. Service Corp. Intern'l., 324 F.3d 212, 213 (3rd Cir. 2003) (citing First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995)).  Whether an arbitration agreement is unenforceable based on any of the "applicable contract defenses, such as fraud, duress, or unconscionability" is also generally determined by state contract principles. Quilloin 673 F.3d at 229-30.

Cintas contends that Curtis' exact claims are within the scope of the Arbitration Agreement and, therefore, we should either dismiss or issue an order staying the current proceedings and compel the parties to arbitrate the dispute.  (See Def.'s Mot. to Dismiss/Stay; Def.'s Reply.)  While not arguing about the scope of the Arbitration Agreement, Curtis asserts that the Arbitration Agreement is unenforceable under Pennsylvania law because it is unconscionable.  (Pl.'s Opp'n Def.'s Mot. to Dismiss/Stay at 6.)  For the reasons set forth below, we find that the Arbitration Agreement is valid and, therefore, enforceable.

---

[1]Both parties assert, and we agree, that Pennsylvania contract principles apply in this action.

5

A.      **Unconscionability**

"To prove unconscionability under Pennsylvania law, a party must show that the contract was both substantively and procedurally unconscionable."[2]  Quilloin, 673 F.3d at 230 (citing Salley v. Option One Mortg. Corp., 925 A.2d 115, 119 (Pa. 2007), confirming as to certified question, 246 F. App'x 87 (3d Cir. 2007)).  "[T]he Pennsylvania Supreme Court has indicated that it might be appropriate to use a 'sliding scale approach' so that where the procedural unconscionability is very high, a lesser degree of substantive unconscionability may be required and presumably, vice-versa."  Id. (quoting Salley, 925 A.2d at 119 n.12).  "This 'sliding scale approach' does not, however, eliminate a party's obligation to demonstrate the existence of both procedural and substantive unconscionability."  Caparra v. Maggiano's Inc., No. 14-5722, 2015 WL 5144030, at *5 (E.D. Pa. Sept. 1, 2015) (citations omitted).  "'[T]he burden of establishing unconscionability lies with the party seeking to invalidate the contract, including an arbitration agreement.'"[3]  Id. (quoting Salley, 925 A.2d at 129).

*1. Substantive Unconscionability*

"Substantive unconscionability refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent."  Harris v. Green Tree Fin. Corp., 183 F.3d 173, 181 (3d Cir. 1999) (citation omitted); see also Quilloin, 673 F.3d at 230.  "An arbitration agreement cannot be construed as substantively unconscionable where it

---

[2]"[U]nconscionability is a question of law for the court."  Stanley A. Klopp, Inc v. John Deere Co, 510 F. Supp. 807, 810 (E.D. Pa. 1981).

[3]Curtis does not separately address procedural and substantive unconscionability in his arguments.  We have reviewed the arguments deciphering which ones pertain to which procedural or substantive prong of unconscionability.  We note, however, that no reading of Curtis' arguments separately or in one group establishes substantive unconscionability.

'does not alter or limit the rights and remedies available to [a] party in the arbitral forum.'"

Quillion, 673 F.3d at 230 (quoting Edwards v. Hovensa, LLC, 497 F.3d 355, 364 (3d Cir. 2007)).

Curtis argues that the Arbitration Agreement is substantively unconscionable because

Cintas is obligated to pay for the costs of the arbitration apart from his share of the American

Arbitration Association's ("AAA") filing fee.  (Pl.'s Opp'n Def.'s Mot. to Dismiss/Stay at 10-

11.)  The Arbitration Agreements states, in pertinent part, as follows:

> Either party desiring to pursue a claim against the other party will submit to the other party a written request to have such claim, dispute or difference resolved through impartial and confidential arbitration. . . .  **Employee's initial share of the arbitration filing fee will not exceed $100 or the amount it would cost Employee to file the equivalent action in court, whichever is less, and will be payable to the arbitrator or AAA.**  Arbitration under this Agreement will be conducted in accordance with the AAA's National Rules for Resolution of Employment Disputes, except if such AAA rules are contrary to applicable state or federal law, applicable law shall govern.
>
> In any arbitration proceeding, the Arbitrator will apply the terms of this Agreement as written, the Federal Arbitration Act, and other relevant federal and state laws, including time limits on claims.  **Employer will bear all fees**, **expenses and charges of the AAA and the Arbitrator, with the exception of Employee's share of the arbitration filing fee.**  The Arbitrator also will have the authority to ward either party appropriate relief, including damages, costs, and attorney's fees, as available under relevant laws.  **In no event, however, will the Arbitrator direct Employee to pay more than Employee's share of the arbitration filing fee toward the fees of the Arbitrator and the AAA.   Notwithstanding the above, upon Employee's showing of indigence, as determined by the Arbitrator under applicable law, Employee's share of the arbitration filing fee will be paid by Employer.**

(Def.'s Mem. Law Support Mot. to Dismiss/Stay at 2) (Ex. 1A ¶ 8) (emphasis added).  He argues

that "[t]he alleged agreement therefore creates an inherent bias in favor of Cintas, the (paying)

'Employer' and it is the arbitrator that will be reading the agreement that requires arbitration."

(Pl.'s Opp'n Def.'s Mot. to Dismiss/Stay at 10.)  Arguing that the language could have been

omitted, Curtis goes on to state "[t]here is no principled reason why an arbitrator or other

mediator needs to know which party is footing the bill for his or her resolution services."  (Id. at

10-11.)  According to Curtis, Cintas has gone out of its way to spell out the fact it is paying the lion's share of the AAA's fees.  (Id. at 11.)  He asserts that this provision is Cintas' "thinly-veiled attempt to improperly influence the neutrality of the forum."  (Id.)

Cintas argues that Curtis cannot establish substantive unconscionability.  (Def.'s Reply at 4.)  Regarding Curtis' suggestion that there is an "inherent bias" in favor of Cintas due to the fact that it is obligated to pay for the costs of arbitration apart from Curtis' share of the AAA's filing fee, Cintas points out the "utter lack of evidence to support [his] position, and contrary to [Curtis'] counsel's argument, there is good reason for including the fee provision in the agreement."  (Id. at 5.)  Cintas states that "[t]he provision is present to prevent any concerns that a litigant would be unduly burdened in vindicating his or her rights in arbitration."  (Id.) (citing Blair v. Scott Speciality Gases, 283 F.3d 595, 605 (3d Cir. 2002) (stating that the United States Supreme Court in Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 90 (2000), acknowledged that "the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum")).  Cintas asserts that the absence of the provision would serve as a better argument for unconscionability than its presence.  (Id.)

Curtis has not shown that the Arbitration Agreement unreasonably or grossly favors Cintas; therefore, he has failed to make the requisite showing needed to prove substantive unconscionability.  He fails to make the obligatory showing that the Arbitration Agreement alters or limits the rights and remedies available to him in the arbitral forum.  See Quilloin, 673 F.3d at 230; Edwards, 497 F.3d at 364.  The Arbitration Agreement is neither grossly one-sided nor manifestly unfair.  In fact, it equally balanced and inherently fair.

As for Curtis' argument that the Arbitration Agreement is substantively unconscionable because of its pronouncement that Cintas will be paying for almost all of the arbitration fees, Curtis proffers no legal support and we, likewise, have found none.[4]  In fact, just the opposite is true.  There are cases by multiple courts holding that limiting the costs to one party in such a manner, as we have here, does not support a finding of substantive unconscionability.  See Ggnsc Camp Hill W. Shore, LP v. Thompson, No. 15-445, 2016 WL 3418490, at *6 (M.D. Pa. June 22, 2016) (stating that "[a]s multiple other courts in this circuit have held, this structure of monetary burdens [i.e., the arbitration agreement limiting the resident's fee for initiating arbitration to an approximate court filing fee of $250 and the remaining arbitration fees and costs paid by Ggnsc] does not support a finding of substantive unconscionability") (citing cases); Hewitt, 2016 WL 2893350, at *3 (ordering that defendants pay all associated costs and fees aside from the initial $150 filing fee, rendering any risk of economic burden to plaintiff non-existent); Golden Gate Nat'l Senior Care, LLC v. Beavens, 123 F. Supp. 3d 619, 631-32 (E.D. Pa. 2015) (concluding that an  arbitration agreement was not substantively unconscionable because it limited the plaintiff's arbitration costs to $250 (approximate fees to commence a court action)).  Also, we note that Curtis does not assert that paying the filing fee is prohibitive to him in any way; therefore, a risk of economic burden is not before us today.  The arbitration fee provision in this case is eminently reasonable.  We conclude that there is neither legal nor factual merit to Curtis'

---

[4]The out-of-circuit case cited by Curtis in support of his argument, Hooters of Am. v. Phillips, 173 F.3d 933, 937-39, 940 (4th Cir. 1999), is distinguishable from the instant situation, as that case involved an entirely different set of facts.  Id. at 940 ("We hold that the promulgation of so many biased rules - especially the scheme whereby one party to the proceeding so controls the arbitral panel - breaches the contract entered into by the parties.  The parties agreed to submit their claims to arbitration - a system whereby disputes are fairly resolved by an impartial third party.  Hooters by contract took on the obligation of establishing such a system.  By creating a sham system unworthy even of the name arbitration, Hooters completely failed in performing its contractual duty.").

substantive unconscionability argument.  Consequently, we find that the Arbitration Agreement is not substantively unconscionable.

Since we find that the Arbitration Agreement is not substantively unconscionable, we need not determine whether it is procedurally unconscionable.  See Zimmer v. CooperNeff Advisors, Inc., 523 F.3d 224, 230 (3d Cir. 2008) ("Because we have concluded that the arbitration agreement here was not procedurally unconscionable and reverse on that basis, we do not need to decide whether the District Court's decision as to substantive unconscionability was correct."); Allstate Ins. Co. v. Toll Bros., Inc., 171 F. Supp. 3d 417, 431–32 (E.D. Pa. 2016) ("Even if Allstate is correct that the execution of the Agreement was tainted by procedural unconscionability, Allstate has failed to show that the terms of the clause are substantively unconscionable.  Without a showing of both forms of unconscionability, the clause must stand."); Caparra, 2015 WL 5144030, at *7 ("[T]he absence of substantive unconscionability mandates the enforcement of the Arbitration Agreement, regardless of a finding of procedural unconscionability.").  Although the issue of procedural unconscionability is irrelevant here given the absence of substantive unconscionability, we will address a few matters about procedural unconscionability for the sake of completeness since it is the primary focus of the parties' arguments.

### 2.  Procedural Unconscionability

"Procedural unconscionability pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language."  Harris, 183 F.3d at 181 (citation omitted); Romero v. Allstate Ins. Co., 158 F. Supp. 3d 369, 380–81 (E.D. Pa. 2016) ("Procedural unconscionability examines the process leading to the formation of the contract and the form and language of the agreement.").  "A contract is

procedurally unconscionable where 'there was a lack of meaningful choice in the acceptance of the challenged provision.'" Quillion, 673 F.3d at 235 (quoting Salley, 925 A.2d at 119). "A contract will be deemed procedurally unconscionable when formed through oppression and unfair surprise." Id. (citation omitted). "Courts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds for the revocation of any contract." Id. (citation omitted).

"Under Pennsylvania law, a contract is generally considered to be procedurally unconscionable if it is a contract of adhesion." Id. (citing McNulty v. H & R Block, Inc., 843 A.2d 1267, 1273 & n.6 (Pa. Super. Ct. 2004); *but cf.* Salley, 925 A.2d at 125–28 (suggesting that not all contracts of adhesion are procedurally unconscionable)). "A contract of adhesion is a standard-form contract prepared by one party, to be signed by the party in a weaker position, usually a consumer, who adheres to the contract with little choice about the terms." Id. (citation omitted). Here, the following facts are undisputed: the Employment Agreement was drafted by Cintas; Cintas had greater bargaining power; and the Employment Agreement was a standardized contract that did not allow for alterations to be made by Curtis. For purposes of our analysis we will assume that the Employment Agreement is a contract of adhesion; however, "'[m]erely because a contract is one of adhesion does not render it unconscionable and unenforceable as a matter of law.'" Romero, 158 F. Supp. 3d at 381 (quoting Salley 925 A.2d at 127). "Factors [I] must consider in determining whether [a] contract [of adhesion] rises to the level of procedural unconscionability include: 'the take-it-or-leave-it nature of the standardized form of the document,' 'the parties' relative bargaining positions,' and 'the degree of economic compulsion motivating the adhering party.'" Beavens, 123 F. Supp. 3d at 632 (quoting Quillion, 673 F.3d at 235–36; Salley, 925 A.2d at 125).

Curtis asserts that the Arbitration Agreement is procedurally unconscionable because it was presented on a take-it-or-leave-it basis since it was given to him on his first day of work, and he was instructed and expected to sign and return it the same day.  (Pl.'s Opp'n Def.'s Mot. to Dismiss/Stay at 8.)  He states that "he was not only desirous, but extremely nervous, as any new employee would be, anxious and willing to do anything to make the best first impression that he could."  (Id.)  He further asserts that "[t]he gross disparity in bargaining power between Curtis and Cintas – a large, publicly-traded company – compounded the pressure on [him]."  (Id. at 9.)  Additionally, he states that the degree of economic compulsion could not have been greater since Curtis and his family would be reliant on his new position to support himself and his growing family.  (Id.)  Curtis also asserts that the form of the Employment Agreement supports a finding of unconscionability because "[t]he document in question is approximately 7 pages of single-spaced text in 10-point font" and it is "signed only on the last page, which makes no mention of arbitration."  (Id. at 9.)

In opposition, Cintas states that "[p]utting aside the fact that [Curtis] admittedly made no effort to bargain, [his] position and economic compulsion do not support his argument."  (Def.'s Reply at 3.)  Cintas points out that Curtis has "a Bachelor's degree from Penn State University and worked as a sales executive for Verizon managing 250 accounts over three states before he made the decision to leave that position and apply at [Cintas]."  (Id.) (citing Compl. ¶¶ 16, 21-25.)  Under the circumstances, Cintas argues that this case hardly qualifies as sufficiently unequal bargaining power or economic compulsion to support a finding of unconscionability.  (Id.)  Moreover, it asserts that "[Curtis'] desire to make a good first impression is subjective and not the kind of improper compulsion contemplated in applicable cases."  (Id. at 4.)  Regarding Curtis' argument about the form of the agreement, Cintas states that "there is no requirement in

Pennsylvania that a contracting party affix his signature to each and every section of an agreement to manifest an intent to be bound by the terms."  (Id.)

Curtis asserts that the Employment Agreement was presented on a take-it-or-leave-it basis, but admits that he never tried to negotiate or raise any questions or concerns that he may have had with it.  We acknowledge that Curtis was undoubtedly the weaker party who faced economic pressures in this typical employer-employee context.  However, we note that he is an educated and sophisticated businessman.  Also, we note that the Arbitration Agreement is conspicuous and seamlessly contained in the body of the Employment Agreement, it is not hidden or written in small print.  Moreover, the terms of the Arbitration Agreement are clear and unambiguous, and Curtis does not allege that he failed to read or fully comprehend them.  Curtis seems to imply that the arbitration provisions are procedurally unconscionable because the Employment Agreement is signed only on the last page, which does not mention arbitration; however, "[t]here is no requirement in Pennsylvania that a contracting party affix his signature to each and every section of an agreement to manifest an intent to be bound by the terms." Soroko v. Atmos, Inc., No. 11-6120, 2015 WL 5585350, at *5 (E.D. Pa. Sept. 23, 2015).  Whether we ultimately conclude that Curtis lacked a meaningful choice in agreeing to arbitrate or not is of no consequence in light of the fact that we have determined that he has not proven that the Arbitration Agreement is substantively unconscionable.[5]  See Zimmer, 532 F.3d at 230.

### 3. Summation

We find that an enforceable agreement to arbitrate exists, and Curtis' dispute clearly falls within the scope of the Arbitration Agreement.  Curtis has failed to show that the Arbitration

---

[5]We note that none of Curtis' arguments that have been considered under procedural unconscionability prove substantive unconscionability.

Agreement is substantively unconscionable; therefore, it is a valid, enforceable contract requiring Curtis to arbitrate the claims set forth in his Complaint.

### B.   Dismissal or Stay of Proceedings

If a case referable to arbitration is brought in federal court, the FAA directs that the court before which the lawsuit is pending "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.  "The plain language of § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration."  Lloyd v. Hovensa, LLC, 369 F.3d 263, 269 (3d Cir. 2004); see also Devon Robotics, LLC, v. DeVidema, 798 F.3d 136, 143-44 (3d Cir. 2015).  Since Cintas requested a stay, we will stay this case, and administratively close it, pending the resolution of arbitration.[6]

## IV.   CONCLUSION

The Arbitration Agreement clearly includes Curtis' claims.  We find that the Arbitration Agreement is not substantively unconscionable.  As such, it is a valid, enforceable contract requiring Curtis to arbitrate the claims set forth in his Complaint.  Although Cintas sought a dismissal of this action, it also requested a stay.  In light of Cintas' request for a stay, we grant that request staying the case, and administratively close it, pending the resolution of arbitration.

An appropriate Order follows.

---

[6]Curtis filed a Motion to Amend the Complaint proposing to add allegations that the Employment Agreement, including its arbitration clause, fails for lack of consideration.  (See Pl.'s Mot. to Amend.)  This amendment to the Complaint is denied as futile since such an amendment would not withstand a motion to dismiss because "[w]hen both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced."  Blair, 283 F.3d at 603-04.  Thus, the Arbitration Agreement is a valid contract which is supported by adequate consideration.  As for Curtis' remaining proposed amendments regarding unconscionability and public policy considerations, they too would not withstand a motion to dismiss and are futile.